22-367. Good morning. May it please the court. Eric Stevens of Jones Day. We are pro bono counsel at the plaintiff appellant. As a former chair of the pro bono panel and committee of the Second Circuit, I want to thank you. The pleasure has been ours, Your Honor. We are pro bono counsel at the plaintiff appellant, Felix Garcia. As this court is familiar with the summary judgment standard and exhaustion requirements of the PLRA, I'd like to start by highlighting three undisputed facts on this appeal. First, it's undisputed that Mr. Garcia filed a timely grievance about injuries that he suffered during a fire and botched evacuation at the Sing Sing prison on April 18, 2011. Now we know that Mr. Garcia filed this grievance because he included a copy of the prison stamped grievance with his original verified pro se complaint. And that grievance is at page A67 of our appendix. That pro se complaint that Mr. Garcia filed also describes his exhaustion efforts at pages A62 through 63 of our appendix. And where he writes in part, quote, I grieve this occurrence and was denied the stated claims on all levels. The second undisputed fact is that after receiving approximately 160 grievances about the fire, the Department of Corrections made the decision to consolidate the grievances. And the docs directives about consolidated grievances required that Mr. Garcia be included in that consolidated grievance and any appeal. We know that that grievance was consolidated because again, with his pro se complaint, Mr. Garcia attached the memo consolidating those grievances. And that's in the appendix at page A68. Mr. Garcia also attached the decisions by the superintendent and the final review board denying that consolidated grievance to his complaint. And that's at A69 and A70 of our appendix. Now, beyond the inclusion of these documents in Mr. Garcia's original pro se complaint, we know that Mr. Garcia had to be included in that grievance because docs directive 4060, section 701.5A3 states that where like grievances are consolidated, quote, a list of the names of every inmate who submitted a complaint on the issue shall be included with the grievance materials and submitted with any appeal which may result, close quote. And we provided the court with that directive and that relevant language comes from our appendix at page 325.6. Now, we all know that shall is mandatory language based on its plain meaning. So the regulation or the directive required them to consolidate it, but we know that it was not consolidated because if we look at pages 208 or 209 of the appendix, which has the list of all of the consolidated complainants, it does not include Mr. Garcia. Is your position that that's a mistake? Yes, Your Honor. That he was consolidated? And it's clear that that was a mistake because as this court has already held in Hayes v. Dahlke, which is cited in our brief and reported it. I mean, it's a mistake, but is it a mistake in the sense that actually that is the way they adjudicated his grievance? Or did they in fact adjudicate his grievance separately but should not have done so? So I did notice, and correct me if I'm wrong, it does not seem like we have a document reflecting the denial of Mr. Garcia's grievance separate from the consolidated denial, right? No, that's right. And that's a critical omission from this record because had they decided his grievance individually, their own directives required them to provide him with an individualized decision. Now, does he dispute that he got such a notice? He says that he got a denial, but could he in that declaration be referring to the consolidated denial? So Mr. Garcia does not refer to his grievance as either individualized or consolidated in any of his testimony, whether it's in his verified complaint, whether it's in his deposition, or whether it's in his declaration. So that's a, I can't answer that question as to what was in his mind. What I would note is that all of that testimony and the dates that he provided in his declaration are consistent with the dates, with the consolidated grievance. In fact, I also noticed on pages 198 and 199 of the appendix, which the government cites to show that there isn't a record of Mr. Garcia's appeal, there's a list of all the closed cases from Garcia complaining grievances that he filed. There's one about harassment by staff, one about the PA system being too loud. But it doesn't seem to reflect a grievance about the fire at all. No, that's right. And again, that absence is conspicuous. This is clearly somebody who both before and after the fire. So does that mean it's possible that they just didn't enter his grievance into the system? Yes. Yes. Absolutely. And the only way to reconcile Mr. Garcia's file stamp grievance, which no one disputes the prison received, and his absence in that list of consolidated grievance with the mandatory language of the directive is to conclude that there was an error in compiling the list of grievance. And we know that there's already an error in compiling the list of consolidated grievance. Because when we asked, in the record, when the prison was asked how many fire grievances did you receive, they reported 159. If you count up all the names on the final consolidated grievance denial, there are 160. So there is no dispute that there is an error in that consolidated grievance. There's no explanation for how the prison had 159 names that presumably included Mr. Garcia, because we have a copy of his prison-stamped grievance, and Albany reports 160 consolidated grievance without it. That's at least two extra people, if you take that at face value, that Albany has a record of in this consolidated grievance, but somehow not Mr. Garcia. So there's simply no way to reconcile Dock's own directives and the mandatory language therein with the fact of his grievance that no one can deny. So the way to explain all of this is you think Garcia filed his grievance, received notice of the consolidated denial, assumed that that was a denial of his grievance, and he filed an appeal from that. But it wasn't recorded in the system because they seem to have omitted his grievance from the computer system. Is that right? Is that what you think happened? If you're asking for the Eric Stevens view, that's certainly supported by the facts of the record, which is that there's no record of his individual appeal ever being addressed in any way, whether it was denied, granted. There's no record of anyone even considering the original grievance. Aside from the consolidated grievance, there's no record of his initial grievance being addressed, right? No, that's right. It disappears. It's the first known declaration that it was addressed. Well, that's right. That's right. And he did include the consolidated grievance denial at the prison level with his original pro se complaint. So that may be the piece of paper that he received and that he was thinking of. The consolidated one. That's correct. That's correct. But there is no piece of paper. So I guess that indicates that he was under the impression that the consolidated denial was a denial of his grievance. Certainly. Certainly it's consistent with that. That's right, Your Honor. Was there any other way to interpret that? Why else would he include it? No, I agree. Agreed. Not in my view. I don't want to get over my skis and suggest that he testified to that effect. But I agree with you that there's no other reasonable interpretation. Am I right in understanding? I mean, your argument so far is that by operation of the directive, he's time to filed an appeal without regard to the fact that he also has stated that he did file an appeal. In other words, are those two independent factual bases for asserting that he's preserved his appeal rights? Or do they work in tandem? Or can either of them independently get you past summary judgment? So I think either independently could survive summary judgment. I think the better reading and the more likely reading and certainly a very plausible reading for a fact finder, particularly given the undisputed evidence that Mr. Garcia was a leader in this effort, including in the paperwork that the other plaintiffs completed and successfully exhausted their grievances. It's a reasonable reading that when he's talking about the grievances that he filed and that he appealed, he has the consolidated grievance in mind. But certainly, certainly either either interpretation is plausible and is sufficient to survive summary judgment on the issue. I'm sorry, what's the other interpretation besides the consolidated? I think as I... That he just says that he got a denial and appealed it, even though the state says that they don't have a record of it, but that creates an issue of fact. That's right. That's right. I see. Okay. And I would, on the mandatory point, I do just want to draw this court's attention to the Hayes v. Dahlke case reported at 976F3259. And this court held in that case that the use of the word shall in the very same section of this very same directive imposed a mandatory 30-day period for the court to decide final appeals. So the language there was the court shall decide an appeal within 30 days. And this court held that that imposed a mandatory obligation. So here, all we're saying is in the very same directive, very same section. If the president had violated that directive by not consolidating Mr. Garcia's grievance and they had communicated to him a separate denial, the separate requirement that he needs to exhaust administrative remedies would probably apply to that denial, right? Maybe there would be a separate claim that they adjudicated improperly or whatever, but wouldn't he have to appeal that denial? I think so, although we... Isn't it important in this case that we actually, it's actually not clear that they did do a separate denial? No, and that's a critical fact and a critical omission. One, there are no documents on this issue anywhere in the record, and the quick declaration is equally noticeably silent on that issue. And the directives say that there have to be documents to the extent that this, his original grievance was directed, dealt with separately. What is the limiting principle? That is when, in answer to Judge Robinson, you said that either, with respect to summary judgment, either the declaration or a series of documents would be enough. Let's just say that we stick to the declaration. You have a grievance. There's an exhaustion requirement, as you well know. And there's a declaration that says, I complain, and I never got a response. And the facility says we have no record of the complaint. Is that declaration, let's just say that it's a very specific declaration that's consistent with all the dates and so on, is that declaration enough to defeat summary judgment?  I think under Bellamy, as limited by Jeffries, the type of declaration that you've just described with very precise dates, I think that probably gets to the level of Bellamy. I think Bellamy, if you're looking for a limiting principle, Bellamy certainly talked about how there needs to be, or at least how in that case there was additional corroborating evidence. It's interesting how parallel the corroborating evidence in Bellamy was to our case here. In Bellamy, this court talked about the absence of corroborating evidence in a follow-up complaint form that was filed by the police officers that were at issue. Here, we've got that same absence of corroborating evidence about the individualized grievance process. There's just no paperwork and there's no definition. If in fact the prison had a record of his grievance, of their separate denial, and had a record that they adjudicated that but never got an appeal from him, that might be enough to achieve summary judgment. His assertion that that's just all wrong, that would be enough to defeat summary judgment? No, I think in that case, no. I think that's a different case. The problem here is that the records are inconsistent and don't seem to reflect what we know is right, which is that they at least received the initial grievance. That's right, and it's also the absurd result here that the defendant at police, they rely on the absence of records to hurt Mr. Garcia, to say that he didn't exhaust, and yet are unable to come forward with the records that they treated him individually. Now, if their records are as infallible and determinative on this issue as that they say they must be, they should have no trouble coming forward with that decision, denying his individualized grievance, which they could then argue he hadn't appealed. Look, that might be a different argument that we were having about the availability of the process, where they're streaming people in this way, but there's just no evidence that that happened, so that's not the argument. You deserve some time for rebuttal, so we'll hear from the other side. Thank you. Thank you. Thank you. Thank you. Mark Rube for the appellees. I think I'll discuss separately, there are two different theories, whether Garcia filed an individual appeal or whether he was part of the consolidated appeal. I think most of your questions are about the consolidated appeal, so I'll go to that first, but I'm happy to come back to the individual appeal. So I'd just like to start with the summary judgment record, which the state appellees put forward a declaration from the custodian of records for the Central Office Review Committee, which I'll refer to as CORC, which is the final level of review. And so that is what the state presented on exhaustion and said that there's no record of an individual appeal and the record of the consolidated appeal does not include Garcia. In response, Garcia submitted the declaration that you've seen that does not purport to have been part of the consolidated appeal. And just to go to some of Judge Lohier's questions about where we draw the lines, I want to make clear that we're not talking here about a pro se litigant who might be given the benefit of the doubt in certain circumstances. Here we're dealing with a represented plaintiff by counsel. And so the language of the declaration says, subsequently, thereafter, the denial from the grievance committee, I immediately filed appeal, the grievance decision, and with respect to the CORC appeal, thereafter, on or about June or July, I filed an appeal. You're reading from 216? Yes, 216. Sorry, yeah. Thereafter, on or about June or July, I filed an appeal from the superintendent's decision to CORC. So that language doesn't really give any notice to the state appellees that he was contending to be part of the consolidated appeal. And so the record was not further developed on that question at that time beyond what was presented in the state appellee's papers and the state's moving papers. But it does suggest that he might have understood himself to be covered by the consolidated appeal. I don't know. Thereabout, on or about June or July, I filed an appeal from the superintendent's decision to CORC. This is a separate question. I mean, do we have anything in the record that shows that there was a notice of a denial of his initial grievance apart from the consolidated appeal? No. We don't have a denial of his grievance from even at the first level, right? That's correct.  Why would we have that? And there's centralized records at DOCS and all the national committees. I guess the thing that I was looking at on pages 198 to 199 about his closed cases, and I said, well, there isn't a reflection even of his initial grievance because that's CORC's records. Right. It would only be reflected there if it was an appeal. Right. So it doesn't necessarily mean they don't have a record of his initial grievance because we just don't have in the record whatever the records were of the initial grievance. That's correct. I mean, we have the initial grievance stamped by DOCS that was presented. And that was received. Right. But we don't have anything showing the denial, right? Right. So we do have the consolidated denial on the record. We have the consolidated denial on the record with a list of names. So why wouldn't the denial of his individual case have been introduced to say, look, he got a denial on this date and we never got an appeal? The state just didn't decide not to put that forward? The state did not put that forward. The state just put forward the CORC decision, which carries it. But you're saying that shouldn't infer that it doesn't exist, just that you didn't put it forward? It's not part of the record. It's not part of the record. If this issue had sort of been developed, then perhaps that would have come up, but it wasn't. Knowing that it's not part of the record, I'm assuming in preparation for this argument you've probably found out what the story is. I'm curious. Is there a record that we don't have on the record? I'm not aware of any records that would not be part of the record that you have. So is the state's theory that he wasn't part of the consolidated case by virtue of the operation of the directive? Yeah, so I want to talk a little bit about the directive. Would you answer that question? Yeah, the state's argument is that his grievance was not consolidated with the other grievances concerning the fire. So let me ask sort of a fact question, legal question. If by operation of the terms of the directive, he should have been, and if it's the case, and I gather you're saying as a matter of facts on the ground, they didn't put his name on the list. Does that mean he wasn't consolidated, or does that just mean they failed to put him on the list? Well, I disagree with the construction of the directive that was discussed by counsel. It sort of ignores the preceding sentence. He quoted the shall language, but the sentence before that says, any like complaints submitted at this time or during processing may be addressed under the same grievance calendar number. So that, along with the first sentence, is permissive language. The theory is that it's permissive as to whether you do a consolidated proceeding, but if you do, then everybody who filed a grievance on that issue needs to be consolidated. Is that not consistent with the language? Like grievances may be consolidated at the option of the initial level. Any like complaints submitted at this time or processed may be addressed under the same grievance calendar. When we get to the shall language, a list of the names of every inmate who submitted a complaint on the issue shall be included with the grievance materials and submitted with any appeal which may be. It's an ambiguity. So the initial sentences say you may consolidate it, and then it says a list of everybody who submitted a grievance on the issue shall be included, which suggests that everybody who submitted a grievance on the issue shall be included, that they all need to be consolidated, but doesn't necessarily say that. You might think that the earlier sentences give you the discretion. Right, and the shall. Let me ask you this question. So even if the state had the discretion, why would they consolidate Garcia's grievance? If they had consolidated the other 160 grievances together, why would it be that Garcia is- He's the only person. Right. Well, the record doesn't give the reason. If you want me to talk about, there could be administrative reasons. For instance, if Garcia's grievance was one of the earlier ones filed, if the fire was on April 18th and the grievance was on April 20th, then it might have become apparent later that there were many more complaints and it sort of consolidated at that phase. That's not plausible either, right? I mean, there was a fire and everybody was involved. Like, it's obvious they were going to get a lot of grievances, right? Right, I mean- They wouldn't have said, oh, maybe Garcia's going to be the only one who complains about the fire at the prison. I'm just saying that DOCS has discretion, and someone who is not consolidated is not without a remedy. If they are not consolidated, then they can file an appeal, an individual appeal from the denial. And how would they know if they're not consolidated? If everybody, all their buddies have filed the same grievance and we know this consolidation has happened in theory, how does an individual know that the purported discretion to exclude one like grievance from the bundle of 159 others was applied here? Well, they would receive an individualized written determination. And is there evidence that that happened? That's going back to the point we were talking about before. There's no evidence of that in the record. I would just also say, if Garcia was resting on the consolidated grievance, he could have also included the grievance number in his declaration. That was one of the things that the district court observed was made the declaration cursory. How would he know to do that? Because if he received the consolidated grievance and was part of that, then he could have included the... I'm sorry, I see... I'm thoroughly confused. I'm very slow, so take me through this. How would he know to do that? Well, I mean, if he was part of the consolidated grievance and received the determination, and there was sort of an oversight in the record keeping, he could have included the number from the decision. So there are two counterfactuals there. Right. So tell me again, just explain it to me again. Eliminating those counterfactuals, how under the current circumstances in this record would he know to do that? Well, we're assuming either he received an individualized determination or didn't. If he received an individualized determination, then he'd have the opportunity to appeal that. If he didn't, and then with the directive on light grievances says that best efforts are used to notify everyone, gives examples of how decisions are distributed either by public posting or individual notice. And then does each person have to file an appeal, or one person files an appeal and the whole consolidated pack goes with them? With the consolidated appeal, one person files an appeal. One of the lead grievance files an appeal, and everyone is included. Everyone gets the benefit of that. Right, and that's what happens. So if he's consolidated, there's no issue here? If he's consolidated, there is no issue, but there's no evidence that he was. He wasn't consolidated because he's not on the list of the consolidated grievances. Right. So if that's a mistake, then there's no issue for him, but he actually was not included in that grievance. Right, I mean. But can I just ask you this question? So you said a moment ago either he got an individual denial or he did not. Now if you can't say for sure on this record whether he got an individual denial or he did not, doesn't that mean summary judgment isn't appropriate because there's a fact question as to whether he exhausted or had an opportunity to exhaust? I mean on the summary judgment motion, there was no evidence even in the form of a declaration stating that I believed I was part of the consolidated grievance. Okay, so that's what you're saying. You're saying he failed to make the argument that he believed he was part of the consolidated one, and that's what he was talking about when he said that he received a denial. But if he had said that, there would be a fact question about whether he was treated as part of the consolidated denial but omitted from the list or whether he got a separate denial. I think that that would definitely be a much more compelling declaration. I was just saying I believe that I was a little bit more confused. I mean it's a little bit of a unique fact situation as opposed to the typical exhaustion case. I'm going to ask you a broader question, but then I want to go back to your answer to Najee's question. So let's say that you lose this argument, lose this particular issue and it proceeds. Exhaustion is usually not an issue that goes to the jury, right? So what would happen? How does this proceed? How does the litigation proceed? Well, it would go, I mean, we are on a summary judgment motion. Summary judgment was denied on the merits. If you deny summary judgment on the exhaustion issue, then it would be a fact, part of the facts to be tried. But a jury does not do it. It would be just the district court judge making an assessment based on whatever the testimony is to trial that exhaustion has or has not been, the exhaustion requirements have or have not been met. I'm actually not sure the answer to that question. I'm struggling a little bit with the omissions in the record and the state sort of invoking them as a shield. It strikes me, I'm trying to figure out why plaintiff isn't entitled to summary judgment on this issue. Not there being a question of fact, but your entire case rests on the suggestion that there is an individual grievance that hasn't yet been adjudicated, or if it has, it's not in the record. Wouldn't the state have the burden at summary judgment to proffer some evidence to support that theory? Well, I'd also like to add that if there's some sort of unadjudicated claim, and I realize this isn't sort of directly answering the whole of your question, but I just want to make clear that there are remedies for unadjudicated claims, that the directives provide that at the court level, for instance, if a litigant doesn't receive a notice that their claim has been received, they can write a letter. This assumes that he knows that somebody has exercised discretion to carve him out of the consolidated process that every other person around him is part of. And in the absence of evidence that he would have reason to know that, how can he be expected to invoke his rights to remedy the failure to adjudicate his individual complaint when he has no reason to think he's not part of that process? That's a sort of chicken-egg problem, I guess. I understand what you're saying, and I, you know, just turn back to, you know, this is not a case where sort of that evidence was presented on summary judgment. Mr. President, was he, he was represented when pro bono? At what point? A series of 14 separate pro se complaints were filed, and the district court appointed a pro bono counsel, and the complaints were, the pro bono counsel filed a consolidated complaint, I believe, in 2014. The counsel went, pro bono counsel went through discovery and summary judgment, I believe, in 2018. So approximately four years. And during that period of representation, you say he failed to make this particular argument or claim. Yes, I mean, I don't read the declaration to be asserting that claim. You're, just going back to your answer to Judge Robbins' question, your position is, well, he had the burden to exhaust because he's filing a suit to show that he exhausted. And your position is that he did, in fact, receive individual denial and failed to appeal it, right? Right. So. I mean, the problem that we're having, I think, is that we don't see the evidence of that in the record, but that is the reason why the district court said that he failed to exhaust, because the district court concluded there's no question of material fact that he received a denial, an individual denial, and he failed to appeal it, right? Right. That's how the case was presented to the district. Now I'm confused. I thought your position was that the record is completely silent as to whether there was an individual denial, and you candidly confess that you're not aware of there having been an individual denial. Yeah, no, I'm sorry. I'm sorry. The record shows the cork denial, I mean, the lack of a cork denial, and that is how the state shows lack of exhaustion at that point, the burden. But in terms of the lack of a cork denial only shows that he failed to exhaust if, in fact, he got an individual denial and didn't appeal to cork, right? Right, but he never claimed that he didn't get a denial. The declaration. So the way the district court saw it was it was undisputed that he got an individual denial and he claimed to appeal it, but there's no record at cork of an appeal, and therefore he failed to exhaust. That's the district court's reasoning, right? Right, and that's— And now the questioning from us is, well, we don't see the record of the individual denial before we even get to whether there's a record of an appeal at cork, and so that's a problem. And your answer to that is, well, it's not on the record, but the reason it's not on the record is because the district court proceedings did not regard that as a disputed question. That's correct, based on the declaration that said I received a denial. I appealed to the superintendent. What do you think about the idea, which seems, you know, plausible. It seems like it's plausible to some of us who've looked at the case just looking at this record that he understood the consolidated denial to be a denial of his grievance and filed appeals along with the consolidated denial. And since we don't have a record of his individual denial, it seems like that might have been what happened, that he didn't get a separate individual denial. Like if that were true, then he would have exhausted whatever remedies were available to him, right? Right. I would just say that that evidence was not presented to the district court in opposition to— And the reason it wasn't presented was because you're just saying he never said clearly enough I understood my claim to have been adjudicated by the consolidated denial. Right. He said I filed an appeal, not I rested on the lead grievance appeal of the consolidated grievance or something to that effect. Okay. Thank you. Okay. Thank you. May it please the court, Eric Stevens with Jones State Pro Bono Council to the plaintiff appellate. First, let me start off by saying, Judge Robinson, I just about had a heart attack there. I thought you were setting me up for the first Matlock moment of my career, where the individualized denial was going to be found to have existed. Clearly, we've heard that that's not a document that counsel is aware of, but seemingly he holds out hope for its existence. A few points that I heard. I heard that— But what about this point that actually the way that the district court understood it was that he was not consolidated. He said that he got a denial, and so he had to have appealed it. And relying on the declaration, the district court reasonably said, well, he acknowledges he got a denial. And so it's enough to look for evidence of an appeal, and we don't see it in the court records. Why wasn't that a reasonable way for the district court to see the case? Well, there was evidence of appeal both in his declaration, where he talks about the appeal that he recalls filing in June or July. There was evidence in his verified complaint that he filed pro se, where he describes those appeals all the way up through and at Cork. And so there was evidence in the record on summary judgment that would have refuted that point. And I think to the judge's question about when Jones Day got involved, because one of the criticisms I'm hearing of Mr. Garcia's declaration is that it was insufficiently drafted by lawyers with litigation in mind. So then that question about when he was represented. So we certainly represented Mr. Garcia at the point that he drafted the declaration on summary judgment. We did not represent him when he put together his pro se complaint, in which he described under oath his exhaustion efforts and included the documents that we say support his inclusion in the consolidated grievance. That's funny because actually his pro se complaint is better at indicating that he thought that the consolidated grievance was the grievance, right? Now, certainly we could have, as his lawyers, given him a made for litigation declaration and asked him to sign it. But that was not how we approached this, and that wasn't how we chose to practice. And so what we ended up with was a declaration that you'll see he wrote in his own hand and in his own words. That's right. And he's offering his best recollection more than seven years after the grievance, after being surprised on summary judgment to find that there was some argument that he hadn't exhausted. So I think any lack of detail or any imprecision, which, by the way, as we talked about before, it is still remarkably consistent with the timeline of the consolidated grievance, is certainly understandable and ways in favor of crediting that declaration. It's his own words in his own hand, as best he recollected it more than seven years later. The only other point I would add is this idea that perhaps Mr. Garcia's grievance was consolidated because it was too early. I'd just direct the court to the stamp. There was some discussion earlier that in its discretion, docs might not consolidate a very early grievance and they might make a decision to consolidate only later. We know that didn't happen in this case because if we look at Mr. Garcia's grievance, and this is at A67 of the appendix, you'll see that that's stamped with the date of April 22nd, 2011. If you then look at the date on the list of consolidated grievances that docs assigns of that grievance being filed, and this is at A211, it's the same date. It's April 22nd, 2001. Again. I'm sorry, what page is that? Sure. So if you go to A211. Yeah. And you'll look at sort of top third of the page. Where it says date filed. There's a date set file, exactly, April 22nd. So does that mean that everybody on this consolidated list filed their grievances on the same day? It's not obvious to me that that's what this means, but it certainly means that Mr. Garcia was not somehow, was not somehow earlier. It's the very same day that his grievance is stamped as applied. And so with that, unless this court, oh, actually, Judge Lothi, you had a question about where this goes next. Yes. I did want to. Because it's a little bit of a puzzle. I did want to draw the court's attention to its decision in Mesa v. Gourd. Yes. Reported at 652 F3305. Which seems to indicate that a district court judge, even in the context of summary judgment, might be able to make a finding with respect to exhaustion. So that's the Seventh Amendment. That's right. I think that case can fairly be read to say that a district court, after holding an evidentiary hearing, could decide this issue. We don't think it would preclude the jury from hearing it. But if the jury didn't hear it, we certainly wouldn't have. So how does that work? How does that work? Well, and I actually, I have, Your Honor, in a prior case, we have had an evidentiary hearing on exhaustion. We had, we were referred to a magistrate judge for a hearing. We had witnesses, including the head of the state grievance program. The magistrate heard from our client, heard from the other witnesses, weighed the evidence, and then wrote a report and recommendation that ultimately went to the district court. So I have seen this issue addressed in that way. It might be as simple as whether at such a hearing the government could come forward with the individualized denial. That's right. Certainly. Certainly. And I think to also, you know, answer a question from Judge Robinson, certainly this court, if it felt appropriate on this record, could grant summary judgment on the exhaustion issue and simply send us back for trial on the merits. Well, I mean, do you think that it's, on this record, it's obvious that he exhausted? I mean, it seems like we have this question as to whether he received the individualized denial or was under the impression that it was the consolidated one, and we just don't know because of holes and gaps in the record. I mean, how can we say there's no question that he definitely exhausted? I think there's no way to read his original grievance, the stamp from the prison, the mandatory language of 4060, and the Hayes case, and come to any other determination that he was included in the consolidated grievance and that for the other reasons that undermine the credibility of the list. So the record does have a list of everybody consolidated in the grievance on the denial. He's not on that list. Correct. But it's also undisputed that that list is inconsistent with what the prison received. So there's no doubt. There are two names that appear to be missing. At least. At least. That's correct. No, there are two names that are added, right? So, like, the testimony is there was 159 grievances filed, and then this gives you a list of 160, and it's missing Garcia, which is one of the others, so it seems like they added names. That's right, and I apologize if I misunderstood, but there are either two names missing at the prison level or two names that have been added at the court level. But if the policy, and I understand there are different views of reading the policy, if the policy says you may consolidate like complaints, if you choose to consolidate like complaints, you shall include the like complaints in your consolidation, then does it matter who's on a list? Is consolidation a clerical thing, or has consolidation happened by operation of the directive in this case? In this case, I think the consolidation happens by operation of the directive. Now, the directive comes with a clerical requirement because the grievance who are consolidated need a record when they come to court that they've properly exhausted, but I think it's clear that once those grievances are consolidated, the like complaints shall be included. It's clear, but, I mean, we just went through the language, and it does seem like it's permissive, the consolidation, and then the shall language is that a list of everybody who's filed a complaint on that issue shall be included. That would be a weird way of saying you must consolidate everybody's complaint, right? The mandatory language is about including a list with the determination. It's not about consolidating everybody in the decision. Well, I certainly understand the argument, but the mandatory language also, the provision that we're talking about continues, and the provision that we're talking about talks about the type of notice that consolidated grievance are entitled to, and so this is at A325.6, and this is now the very bottom quarter of the page. It's section 701.5, paragraph A, subparagraph 3. At the end of the paragraph, it explicitly warns that once the grievances are consolidated, not every complainant may receive an individual written response, but the three or four grievance of record will. If none of the grievance of record appeal to the next level, any inmate who submitted a complaint may continue the appeal. Now, it also, before that, says every effort will be made to notify all the grievance, but again, the only way that this sort of best efforts language will do our best to notify everybody who's been consolidated, but we don't have to, the only way that that language makes sense and the only way that that treats people fairly is if the consolidation is mandatory. It cannot be the case where you have. If the inclusion of everybody is mandatory once the decision to consolidate is made. That's right. You could have decided to address all of these as individual complaints. Certainly, certainly, but it cannot be the case that the corrections officials are given the discretion to exclude you from a consolidated grievance. Without telling you. Without giving you any way to ever find out about whether you're in or you're out until eight years later, you're up on summary judgment. But the language that you think requires the mandatory consolidation is the sentence that says, a list of the names of every inmate who submitted a complaint on the issue shall be included with the grievance materials submitted with any appeal which may result. That's right. That's the language. That's right. But that language really does just, it might have an implication that you're suggesting, but it does just require that the list shall be included, the list of consolidated grievance. And, in fact, the previous sentence says any like complaints submitted at this time or during processing may be addressed under the same grievance calendar number. I'm saying any complaint may be addressed does seem permissive. So there does seem to be some ambiguity. I think there is discretion available at the point of deciding whether or not to consolidate the grievances on a particular issue. And I think that's the type of language in the earlier paragraphs. But I think to put the question another way, if this language isn't mandatory and only the list is mandatory and the list has to be part of any appeal, what's the point of the list? Why are we making this list if it's not a list of grievance who are included in the appeal? Well, it seems to be pretty important. I mean, we're on the list like this would be a much easier case. Certainly. It is pretty important that they include a list of the complainants that they're adjudicating whenever they issue a decision. But there is some ambiguity that arises from a lack of records that seems to inure to your client's benefit here. Well, I think certainly it's unfair for the defendants to use it as both a sword and a shield. I don't know that it inures to his benefit. I think he would have been. Here, in the context of this summary judgment motion, right? I think he would have benefited significantly from properly being included on the list at issue and then we wouldn't be here. I don't see how he benefits from being left off a list that he was required to be on. I think I would point out the language here doesn't say that the list shall include everybody who's consolidated. It says the list. That's what makes it ambiguous. It says the list shall include everybody who filed a light complaint. That's right. But that's a weird way of saying everybody who filed a light complaint shall be consolidated because the prior sentence that says the light complaints may be consolidated could have said that but doesn't. So I understand. But I'm just saying it's not totally obvious. No, and of course, and we would say that the way to resolve that ambiguity is the list goes with the appeal. The only purpose for the list is to know who's part of the appeal. So you can make an evidentiary argument. Precisely. Okay. Well, we've kept you well past your time. My thanks to the panel. And we'll reserve the decision. And that concludes today's argument calendar. And I'll ask the Deputy to adjourn. Thank you. Court is adjourned.